# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

KENNETH JOHNSON,

    Petitioner,

v.                                      Case No. 2:14-CV-10976

CATHERINE BAUMAN,

    Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

Petitioner Kenneth Johnson, incarcerated at the Ryan Correctional Facility in Detroit, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, Petitioner challenges his conviction of armed robbery,[1] carjacking,[2] felon in possession of a firearm,[3] and possession of a firearm during the commission of a felony.[4] For the reasons that follow, the petition for a writ of habeas corpus will be denied.

## I. BACKGROUND

Petitioner was convicted of the above offenses following a jury trial in the Wayne County Circuit Court.

---

[1] Mich. Comp. Laws § 750.529.

[2] Mich. Comp. Laws § 750 .529a.

[3] Mich. Comp. Laws § 750.224f.

[4] Mich. Comp. Laws § 750.227b.

1

On December 23, 2008, Scott Dallo (the victim) stopped at a gas station between 5:15 and 5:30 p.m. on his way home from work. (Tr. 4/21/09, pp. 72-73, 90). Dallo went into the store to purchase a lighter and was approached by Petitioner who mumbled something to him. (*Id.,* pp. 76-78). Petitioner followed Dallo out of the store and kept mumbling to Dallo. In an attempt to understand what Petitioner was saying, Dallo turned around and was asked by Petitioner "[a]re you straight?" Petitioner had a "pretty deep" voice and "all the words were together." (*Id.,* p. 80). When Dallo opened the door to his Jeep with the key fob, he found Marieo Sturges inside the Jeep, pointing a semi-automatic handgun at him. (*Id.,* pp. 80-82, 85, 86).

Once the three men were in the Jeep, Sturges told Dallo to drive, which he did. The men stopped in a location unknown to Dallo, at which point Sturges hit Dallo in the head with a handgun. (*Id.,* pp. 84-87). Petitioner pulled Dallo from the seat of the Jeep and both he and Sturges punched Dallo on the head about twenty to twenty-five times. Petitioner took about eighty dollars in cash, Dallo's Sprint Trio cellphone, and driver's license and passed them to Sturges. The interior light of the car illuminated Johnson and Sturges so that Dallo could clearly see each of the men. (*Id.,* pp. 88-90, 92-94).

Petitioner threw Dallo to the ground, punched him a few more times and then drove off. Dallo flagged down a truck, borrowed a cell phone and called his father, who accompanied him to the police department to make a report. At the police station, Dallo accessed Sprint's website to utilize the "Family Locator" feature, which located the phone and displayed it on a map. (*Id.,* pp. 102-05). A police car was dispatched to the location where the officers observed a group of four men, including Petitioner, walking out of a house toward Dallo's Jeep. (*Id.,* pp. 221, 229-30, 259-60). Sturges had the key

fob in his hand and unlocked the Jeep's doors. (*Id.,* pp. 223-24, 260-61). The officers ordered all four men onto the ground. As Sturges got onto the ground, he pushed an object, which turned out to be Dallo's cell phone, under the snow. (*Id.,* pp. 226, 246-47, 266).

Dallo participated in a live line-up of eight individuals. Dallo identified Sturges because he had an afro. Mr. Dallo asked the police if he could hear the voices of the men in the line-up because he remembered Petitioner's mumbling voice "pretty well." Dallo asked to hear the individuals say "get out of the car." Petitioner had said that as he removed Dallo from the Jeep. Dallo testified that hearing the voices "helped tremendously." Dallo testified he was "[a]lmost a hundred percent" sure that Petitioner had been one of the two men who had robbed him. (*Id.,* pp. 107-09).

The officer in charge of the investigation, Sergeant Javaier Chapa, subsequently showed Dallo a photo line-up containing eight photographs, including the other two men arrested with the Jeep that night. (*Id.,* pp. 112-13, 331, 346-351). Mr. Dallo picked two men from the photo line-up. (*Id.,* p. 115). Dallo correctly identified Sturges, but the second individual he selected was not Petitioner. (*Id.,* pp. 146, 351, 353). The "[l]ive line-up was a lot easier for" Dallo because he could see the participants' respective heights and their hair. The photo line-up did not include pictures from the same day; they could have been from years ago. (*Id.,* p. 116). Mr. Dallo also testified that Petitioner wore the same Prada shirt in court that he wore the evening of the carjacking. (*Id.,* p. 134).

The Michigan Court of Appeals affirmed in part Petitioner's convictions and vacated a conviction for unlawfully driving away an automobile charge. *People v.*

*Johnson*, No. 292238, 2010 WL 4026105 (Mich. Ct. App. Oct. 14, 2010); *reconsideration den. People v. Johnson*, No. 292238 (Mich. Ct. App. Dec. 14, 2010), *leave to appeal denied at* 796 N.W.2d 249 (Mich. 2011).

Petitioner filed a post-conviction motion for relief from judgment, which was denied. *People v. Johnson,* No. 09-000732-02-FC (Wayne County Circuit Court, April 5, 2013). The Michigan appellate courts denied Petitioner leave to appeal. *People v. Johnson*, No. 316798 (Mich.Ct.App. Oct. 25, 2013); *leave to appeal denied at* 846 N.W.2d 561 (Mich. 2014).

Petitioner now seeks a writ of habeas corpus on the following grounds:

I. Petitioner was denied his Sixth and Fourteenth Amendment rights to effective assistance of counsel at trial when his attorney failed to seek to suppress the complainant's in-court and voice identification of Mr. Johnson as one of the perpetrators of the offense.

II. Petitioner was denied his Sixth Amendment right to a public trial when the trial court excluded the public from the courtroom during jury selection without taking any reasonable measures to accommodate the public's attendance during this portion of the Petitioner's trial.

III. Petitioner was denied his Fourteenth Amendment right to effective assistance of appellate counsel where appellate counsel failed to raise the issue that Mr. Johnson was denied his Sixth Amendment right to a public trial in the Petitioner's appeal of right.

## II. STANDARD

4

Title 28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766,

5

773 (2010)(quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

### III. DISCUSSION

The court discusses all of Petitioner's claims together because they all involve allegations of the ineffective assistance of trial or appellate counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. He must overcome the presumption that, under the circumstances, the challenged action might be sound trial

strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 562 U.S. at 112). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009). On habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F.3d 602, 617 (6th Cir. 2005).

In his first claim, Petitioner alleges that trial counsel was ineffective for failing to move to suppress the in-court and voice identification. Petitioner argues that the lineup was unduly suggestive because the lineup participants varied in their height, age, weight, and hairstyles and were similar only in regards to sex and race.

Due process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive

procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977). However, to determine whether an identification procedure violates due process, courts look first to whether the procedure was impermissibly suggestive; courts then determine whether, under the totality of circumstances, the suggestiveness has led to a substantial likelihood of an irreparable misidentification. *Neil v. Biggers*, 409 U.S. 188 (1972). Five factors should be considered in determining the reliability of identification evidence: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of the crime; (3) the accuracy of the witness's prior description of the defendant; (4) the witness's level of certainty when identifying the suspect at the confrontation; and (5) the length of time that has elapsed between the time and the confrontation. *Id.* at 199-200.

A criminal defendant has the initial burden of proving that the identification procedure was impermissibly suggestive. It is only after a defendant meets this burden of proof that the burden then shifts to the prosecutor to prove that the identification was reliable independent of the suggestive identification procedure. *See United States v. Wade*, 388 U.S. 218, 240, n. 31 (1967). If a defendant fails to show that the identification procedures were impermissibly suggestive, or if the totality of the circumstances indicates that the identification is otherwise reliable, no due process violation has occurred. As long as there is not a substantial likelihood of misidentification, it is for the jury to determine the ultimate weight to be given to the identification. *See United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992).

Petitioner is not entitled to habeas relief because he has failed to show that the victim's in-court identification was the result of suggestive procedures.

First, the mere fact that the victim failed to identify Petitioner at the photographic lineup and his initial hesitancy to pick out Petitioner at the live line-up did not require the suppression of the victim's in-court identification of Petitioner. An earlier failure to identify a defendant, or even a positive identification of a different suspect, does not require the exclusion of an in-court or pretrial identification, if the identification is otherwise reliable. See *Howard v. Bouchard,* 405 F.3d 459, 484 (6th Cir. 2005)(collecting cases). The victim's failure to previously identify Petitioner at the photographic identification and his initial inability to identify Petitioner without hearing Petitioner's voice at the live lineup went to the weight, not the admissibility, of his in-court identification. *Id.*

Petitioner next claims that the victim's identification was tainted because the police told him that the perpetrators were apprehended. A pretrial line-up is not rendered impermissibly suggestive simply because a witness knows that the suspects were in custody when the lineups were conducted. *See United States v. Bowman,* 215 F.3d 951, 966 (9th Cir. 2000); *see also United States v. Carter,* 756 F.2d 310, 313 (3rd Cir. 1985)(while statement by security officer to witness that there would be suspect in lineup she was about to view was dangerously suggestive when combined with one person show up, that was not true in case of a fair lineup); *Johnson v. Warren,* 344 F. Supp. 2d 1081, 1090 (E.D. Mich. 2004)(same). As the Ninth Circuit has noted, "[i]t stands to reason that there *is* a suspect at the lineup stage." *Bowman,* 215 F.3d at 966 (emphasis original).

Next, the fact that the victim only identified Petitioner after hearing his voice did not render the identification at the live lineup unreliable. "The identification of the voice

of a person suspected of a crime as the voice of a suspected criminal is admissible evidence." *Alder v. Burt,* 240 F. Supp. 2d 651, 674 (E.D. Mich. 2003)(citing *Stovall v. Denno*, 388 U.S. 293, 295 (1967)). Hence, "[P]ersons in a lineup can be required to speak words or phrases supposedly uttered by the culprit." *See Swicegood v. State of Ala.,* 577 F.2d 1322, 1327 (5th Cir. 1978)(citing *Wade,* 388 U.S. at 222-23). Requiring Petitioner and the other participants in the lineup to speak the words uttered by the perpetrator in this case was not unduly suggestive and did not deprive petitioner of his rights to due process. *See e.g. U.S. v. Beard.* 381 F.2d 325, 326-28 (6th Cir. 1967).

Finally, the victim's indication that he was almost one hundred percent sure of his pre-trial identification of Petitioner establishes that the victim's identification was sufficiently reliable to pass constitutional muster. *See U.S. v. McComb,* 249 Fed. App'x. 429, 440-41 (6th Cir. 2007).

Even assuming that the pre-trial identification procedures were unduly suggestive, Petitioner has failed to show, under the totality of circumstances, that the suggestiveness led to a substantial likelihood of an irreparable misidentification. The victim testified that he clearly saw Petitioner in the store at the gas station and that the light within the car clearly illuminated the faces of the perpetrators. (Tr. 4/21/2009, pp. 79, 92). The victim told the police that he was 99 to 100% positive that Petitioner was the assailant and positively identified Petitioner at the preliminary examination. The victim at trial testified that he had no doubt that petitioner was his assailant. (*Id.,* pp. 108-109). Furthermore, courts tend to "place greater trust in witness identifications made during the commission of a crime because the witness has a reason to pay attention to the perpetrator." *Howard v. Bouchard,* 405 F.3d at 473; *see also United*

10

*States v. Meyer*, 359 F.3d 820, 826 (6th Cir. 2004) (finding heightened degree of attention where witness spoke with robber and studied his features while looking for an opportunity to escape); *United States v. Crozier*, 259 F.3d 503, 511 (6th Cir. 2001) (finding heightened degree of attention where robber confronted witnesses with a gun). These factors all support the trial court's finding that an independent basis existed for the victim's in-court identification of Petitioner. *See Robertson v. Abramajtys,* 144 F. Supp. 2d 829, 847 (E.D. Mich. 2001).

Petitioner alleges that trial counsel was ineffective by failing to have the voice identification suppressed because Dallo was unable to identify Petitioner without first hearing him speak and because Dallo was told before the lineup that the officers had apprehended the perpetrators. The Michigan Court of Appeals rejected Petitioner's claim on the ground that "[a] person's voice is a competent means of identification if the identifying witness is positive or certain of the identification and there exists some reason to which the witness attributes his ability to make the identification." *People v. Johnson*, 2010 WL 4026105, at * 2. The Court of Appeals added, "The most common, but not the exclusive, reasons are a peculiarity in the person's voice or the identifying witness's previous knowledge of the person's voice." *Id.*

Dallo testified the Petitioner's voice was "pretty deep" and "all the words were together." Dallo also testified that he remembered Petitioner's voice "pretty well" and wanted to hear if the person he suspected, being Petitioner, mumbled his words. Upon hearing Petitioner's voice, Dallo was 95 to 99 percent certain that Petitioner was the perpetrator. (Tr. 4/21/09, p.110).

In light of the fact that the victim's identification of Petitioner was independently reliable, given the ample opportunity that he had to observe petitioner at the crime scene and the certainty of his in-court identification, Petitioner was not prejudiced, as required to establish ineffective assistance, by trial counsel's failure to make a pretrial motion to suppress the victim's in-court and out-of-court identifications on the basis that the lineup was suggestive. *See Howard v. Bouchard,* 405 F.3d at 481-485). Petitioner has failed to show that the lineup procedure was unduly suggestive; therefore, he has failed to show that his lawyer was ineffective for failing to move for suppression of the pre-trial identifications. *See Perkins v. McKee,* 411 F. App'x. 822, 833 (6th Cir. 2011). Petitioner is not entitled to habeas relief on his suggestive identification claim.

Petitioner next contends that his Sixth Amendment right to a public trial was violated when the courtroom was closed to the public during *voir dire*.

Respondent contends that petitioner's public trial claim is waived and/or procedurally defaulted, in part, because Petitioner failed to object to the closure of the courtroom for the jury selection process. The trial court, in denying Petitioner's claim on post-conviction review, ruled that Petitioner was foreclosed from bringing the issue because of his failure to object. *People v. Johnson,* No. 09-000732-02-FC, *2-3 (Third Circuit Court, April 5, 2013).

"The central aim of a criminal proceeding must be to try the accused fairly." *Waller v. Georgia*, 467 U.S. 39, 46 (1984). The Sixth Amendment public-trial guarantee was created to further that aim. *Id.* (citing *Gannett Co. v. DePasquale*, 443 U.S. 368, 380 (1979)). A public trial helps to ensure that judge and prosecutor carry out their duties responsibly, encourages witnesses to come forward, and discourages perjury. *Id.*

12

The violation of the constitutional right to a public trial is a structural trial error, not subject to the harmless error analysis. *Id.* at 49-50, n. 9.

In *Presley v. Georgia,* 558 U.S. 209, 216 (2010), the Supreme Court held that a criminal defendant's Sixth Amendment right to a public trial was violated when the trial court excluded the public from the *voir dire* of prospective jurors, when the court failed to consider reasonable alternatives to closure.

Although the right to a public trial is a fundamental right, it can also be waived if a habeas petitioner either acquiesces to the closure of the courtroom or fails to object. *See Johnson v. Sherry*, 586 F.3d 439, 444 (6th Cir. 2009)(citing *Freytag v. Commissioner*, 501 U.S. 868, 896 (1991)("[T]he Sixth Amendment right to a trial that is 'public,' provide[s] benefits to the entire society more important than many structural guarantees; but if the litigant does not assert [it] in a timely fashion, he is foreclosed."); *Peretz v. United States*, 501 U.S. 923, 936–37 (1991)(citing *Levine v. United States*, 362 U.S. 610, 619 (1960)).  Other circuits have reached the same conclusion. *See U.S. v. Reagan,* 725 F.3d 471, 488-89 (5th Cir. 2013)(defendants waived claim that right to public trial violated by the closing of the courtroom during *voir dire*, hence, claim unreviewable on appellate review); *U.S. v. Christi*, 682 F.3d 138, 142-43 (1st Cir. 2012)(defendant waived any claim of error in court limiting public access to courtroom during most of jury instructions by counsel's failure to object); *U.S. v. Rivera,* 682 F.3d 1223, 1232 (9th Cir. 2012) (defendant may forfeit the right to a public trial, either by affirmatively waiving it or by failing to assert it in a timely fashion).  Under Michigan law, a public trial claim is considered forfeited by a defendant's failure to object to the closure of the courtroom at trial. *See People v. Vaughn*, 821 N.W.2d 288 (Mich. 2012).

The fact that the denial of the right to a public trial is a structural error does not mean than the claim cannot be waived by Petitioner's failure to object. Although structural errors are presumed to be prejudicial and thus not subject to harmless error review, such errors are nevertheless subject to the general rules of waiver, forfeiture, and default. *See Johnson v. United States*, 520 U.S. 461, 466 (1997)(waived or forfeited structural error subject to plain error review under Fed. R.Crim. P. 52(b)). *See also United States v. Suescun*, 237 F.3d 1284, 1288, n. 12 (11th Cir. 2001)("Structural defects do not absolve a defendant's waiver of a defense or objection."). As noted above, numerous cases have held that the right to a public trial can be waived. Petitioner's failure to object to the closure of the courtroom during *voir dire* thus waives federal habeas review of his public trial claim. *Johnson,* 586 F.3d at 444.

Petitioner has failed to show that trial counsel was ineffective for failing to object to the closure of the courtroom for jury selection, either to excuse the waiver, or as an independent claim for relief for several reasons.

First, other than Petitioner's self-serving affidavit, there was no indication that any members of the public actually left the courtroom during the jury selection. In the absence of any indication that the public was, in fact, excluded during the *voir dire* process, counsel was not ineffective in failing to object.

Secondly, to the extent that the general public may have been excluded during *voir dire,* trial counsel's decision to agree to a closure of the courtroom for a non-public *voir dire* could well have been a reasonable trial strategy for the purpose of obtaining more honest or forthright responses from jurors during such a non-public *voir dire*, thus, defeating petitioner's ineffective assistance of counsel claim. *See Horton v. Allen,* 370

14

F.3d 75, 82-83 (1st Cir. 2004); *see also Jones v. Bradshaw,* 489 F. Supp. 2d 786, 841 (N.D. Ohio 2007).

Thirdly, at the time of Petitioner's trial in 2009, there was some question as to whether the Sixth Amendment public trial right applied to the *voir dire* process. The Supreme Court had at the time of petitioner's trial held that the First Amendment right of public access applied during *voir dire*, *see Press-Enter. Co. v. Super. Ct.*, 464 U.S. 501, 510-11 (1984), but one justice concurring in that holding suggested that the Sixth Amendment public trial right might have a more limited scope. *See Id.* at 516 (Stevens, J., concurring). *Presley* was not decided until 2010, after Petitioner's trial. Because Petitioner's counsel at the time of the trial in 2009 may well have reasonably questioned whether Petitioner had any constitutional right to an open courtroom during *voir dire,* counsel was not ineffective for failing to object to the closure of the courtroom during *voir dire. See Woodson v. Hutchinson,* 52 Fed. App'x. 195, 198 (4th Cir. 2002).

Finally, assuming that trial counsel was deficient for failing to object to the closure of the courtroom for *voir dire*, Petitioner has failed to allege, let alone establish, that he was actually prejudiced by the closure of the courtroom for jury selection. Because Petitioner has failed to show that a different result would have happened had trial counsel objected to the closure of the courtroom for jury selection, Petitioner is not entitled to habeas relief on his ineffective assistance of trial counsel claim. *Hunter v. Bergh*, No. 15-2167, 2016 WL 790966, (6th Cir. Feb. 29, 2016) (finding *Strickland* not satisfied where no showing that result would be different had defendant's sister not been excluded from courtroom); *see also Premo v. Moore*, 131 S.Ct. 733 (2011) (finding

error in the Ninth Circuit's incorporation of the prejudice standard governing the underlying error caused by counsel into the *Strickland* prejudice inquiry).

In his third claim, Petitioner contends that appellate counsel was ineffective for failing to raise his public trial claim and a related ineffective assistance of trial counsel claim on his appeal of right. The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985). However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). This court has already determined that Petitioner's second claim is without merit. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Because Petitioner's second claim cannot be shown to be meritorious, appellate counsel was not ineffective in her handling of Petitioner's direct appeal. Petitioner is not entitled to habeas relief on his ineffective assistance of appellate counsel claim.

## A certificate of appealability.

Before Petitioner may appeal this decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000). "A petitioner satisfies this

standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. at 327. In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merits of the claim. *Id.* at 336–37. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

Having considered the matter, the court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right as to his habeas claims. Accordingly, the court will deny Petitioner a certificate of appealability.

## IV. CONCLUSION

IT IS ORDERED that Petitioner Kenneth Johnson's petition for writ of habeas corpus [Dkt. # 1] is DENIED.

This court DECLINES to issue a certificate of appealability.

          S/Robert H. Cleland  
          ROBERT H. CLELAND  
          UNITED STATES DISTRICT JUDGE

Dated: October 12, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 12, 2016, by electronic and/or ordinary mail.

          S/Lisa Wagner  
          Case Manager and Deputy Clerk  
          (313) 234-5522